UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY MICHAEL GARDNER,<br><br>Plaintiff,<br><br>v.<br><br>STANISLAUS COUNTY SHERIFF'S DEPARTMENT, *et al.*,<br><br>Defendants. | Case No. 1:17-cv-01369-DAD-JDP<br><br>SCREENING ORDER<br><br>FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF PROCEED ON THE COGNIZABLE CLAIM AND THAT NON-COGNIZABLE CLAIMS BE DISMISSED WITH LEAVE TO AMEND<br><br>OBJECTIONS, IF ANY, DUE IN 14 DAYS<br><br>ECF No. 1 |

Plaintiff Jeremy Michael Gardner is a state prisoner proceeding without counsel and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff's complaint is before the court for screening under 28 U.S.C. § 1915A. The court finds that plaintiff has stated a cognizable excessive force claim against defendant Deputy P. Boles. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that he be granted leave to amend the complaint.

**I.    SCREENING AND PLEADING REQUIREMENTS**

A district court is required to screen a prisoner's complaint seeking relief against a governmental entity, its officer, or its employee. *See* 28 U.S.C. § 1915A(a). The court must

1

identify any cognizable claims and dismiss any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016) (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)).

**II.    COMPLAINT**

The court draws the following facts from plaintiff's verified complaint, ECF No. 1, and accepts them as true for purposes of screening. Plaintiff is incarcerated at the Public Safety Center ("PSC") in Modesto, California. *Id.* at 1. Plaintiff names the following individual custodial officers of PSC as defendants: Deputy P. Boles, Deputy Majusiak, and Facility Training Officer ("FTO") Flores. *Id.* at 2. Plaintiff also names an institutional defendant, the Stanislaus Sheriff's Custodial Division at PSC. *Id.* Plaintiff seeks to bring three claims relating to his confinement at PSC: (1) excessive force; (2) interference with his mail; and (3) deprivation of nutrition. *Id.* at 3-8.

2

**A. Claim I: Excessive Force**

Plaintiff alleges that on November 7, 2016, he had a dispute with an inmate two cells away from plaintiff's cell. *Id.* at 3. Two custodial officers, Deputy P. Boles and Deputy Majusiak, ultimately intervened. *Id.* Plaintiff's antagonist informed the officers that plaintiff's cell contained contraband, and the officers made plaintiff "cuff up" and exit his cell so that they could conduct a search. *Id.* Plaintiff complied and was "directed to the booking room, where [he] was seated in a chair." *Id.* C.O. Majusiak and F.T.O. Flores kept watch over plaintiff in the booking room while C.O. Boles searched plaintiff's cell. *Id.* When C.O. Boles returned to the booking room, he "immediately provok[ed plaintiff] into argument by pointing his finger in [plaintiff's] face and calling [him] a 'liar.'" *Id.* Plaintiff then rose from his chair "to further [his] disagreement appropriately, and upon [his] arise, [he] made contact with C.O. Boles[']s chin with [his] head." *Id.* This contact was unintentional and resulted from C.O. Boles's close proximity to plaintiff. *Id.* at 3-4. Nonetheless, the correctional officers interpreted plaintiff's action as a "threat rather than [an] accident, and la[i]d hold of [plaintiff]." *Id.* at 4. C.O. Boles punched plaintiff with a "closed fist[] three times in the head and side of face." *Id.* The custodial officers "then threw [plaintiff] to the ground, where [he] cooperated in submission." *Id.* "Numerous" additional correctional officers then came to the booking room. *Id.* The officers decided to relocate plaintiff, and when they lifted him from the floor, "they used unnecessary means by pulling [him] up by [his] hair." *Id.* The officers then dragged plaintiff to "the facility medical location," where he was treated for his injuries. *Id.* He did not mention to the treating nurse that he had been struck by a closed fist because he was still in shock. *Id.* While he was examined, an officer "stood on [plaintiff's] bare right root with [an] immense amount of his weight causing [a] hardly tolerable amount of pain." *Id.*

Apparently related to the above-described incident, "[a] fictitious report was composed by Deputy Boles containing claims of false statements made by [plaintiff] in order to favor [the officers'] actions and misconduct." *Id.*

**B. Claim II: Mail Disruption**

Plaintiff alleges that from February 6, 2017 to June 29, 2017 plaintiff has not received answers to 26 letters, 6 of which were legal mail. *Id.* at 5. Plaintiff suspects that "on more than one occasion" he has been the "victim of mail prejudice[] due to intentional negligence by the Custodial Staff/Officers, during their distribution and fo[r]warding duties." *Id.* In May 2017, plaintiff alleges that his "suspicion was affirmed of such negligence when [he] rec[ei]ved mail addressed to another inmate." *Id.* Also in May, an inmate named Mathew Benak approached plaintiff and informed him that Benak had received plaintiff's mail consisting of medical documents. *Id.* Benak also informed plaintiff that when Benak "advised the officer distributing the mail of his error, the officer responded by calling [plaintiff] a negative name (Asshole), and that he was aware of his intentional misguidance and by refusing to recollect the mail in order to correct the situation, he left the mail in Mathew Benak's possession." *Id.* Plaintiff has "illuminated the situation numer[]ous times on many levels and [is] without satisfactory resolution." *Id.* at 5-6.

**C. Claim III: Deprivation of Nutrition**

Plaintiff alleges the following claim against the "Stanislaus County Sheriff's Department Custodial Division, Nutrition Administrator and those of it[]s employ." *Id.* at 7. Plaintiff alleges that he frequently receives "meal tr[a]y[]s that have not been properly filled to their intended capacities." *Id.* As an example, he describes the supper placed in his cell on August 2, 2017: "I anticipated amongst my return to my one[-]man cell finding an adequately proportioned tr[a]y, however, to my disappointment I found the designated compartment reserved for vegetables (pea[]s) was only 1/5 full—obvious[ly] not to be the intended measurement carefully calculated by the dietitian." *Id.* Plaintiff further alleges that "on numerous occasions" he has been given "misproportioned meals, and declared a need for exchange for a properly measured course" only to be denied. *Id.* He has complained to the "kitchen staff" to no avail. *Id.* "The inadequate tr[a]y[]s continued to be misproportioned and in tantamount need of correction for it is no small matter when one's nutritional health is in the balance." *Id.* Plaintiff has "documentation of

[medical] attention that had arose from the negligence." *Id.* Plaintiff finally alleges that "a dietitian has carefully calculated the meal[]s to meet a standard guideline in requirement[]s vital for human consumption, however that is not what was being produced and provided by industry." *Id.*

## III. DISCUSSION

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). To state a claim under § 1983, a plaintiff must allege that a person, while acting under color of state law, personally participated in the deprivation of a right secured by federal law. *See Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). A defendant personally participates in a deprivation "if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 988 (E.D. Cal. 2017) (quoting *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012)). Vague and conclusory allegations of personal involvement in an alleged deprivation do not suffice. *Id*.

Local governmental units, such as counties or municipalities, are considered "persons" within the meaning of § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 & n.54 (1978). Notwithstanding, municipal departments and sub-units, including police departments, are generally not considered "persons" within the meaning of § 1983. *United States v. Kama*, 394 F.3d 1236, 1239 (9th Cir. 2005) (Ferguson, J., concurring) (findings municipal police departments and bureaus are generally not considered "persons" within the meaning of 42 U.S.C. § 1983); *Vance v. County of Santa Clara*, 928 F. Supp. 993, 995-96 (N.D. Cal. 1996) (holding that "naming a municipal department as a defendant is not an appropriate means of pleading a § 1983 action against a municipality," and dismissing the Santa Clara Department of Corrections from the action); *Brockmeier v. Solano County Sheriff's Dept.*, 2006 WL 3760276, *4 (E.D. Cal. 2006) (finding that sheriff's department is a municipal department and not a proper defendant for purposes of plaintiff's § 1983 claims).

A governmental entity cannot be liable "solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (1978). However, a governmental entity can be liable under § 1983 when an injury is inflicted by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent policy." *Id*. at 694.

Here, the Custodial Division of the Stanislaus Sheriff's Department is not a proper defendant because it is a sub-division of the County of Stanislaus.[1] However, the rest of the named defendants—Deputy P. Boles, Deputy Majusiak, and FTO Flores—are state prison employees who, accepting plaintiff's allegations as true, can be inferred to have acted under color of state law. *See Paeste v. Gov't of Guam*, 798 F.3d 1228, 1238 (9th Cir. 2015) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law" (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988)).).

Of the three properly named defendants, plaintiff plausibly alleges that Deputy P. Boles personally participated in the alleged deprivations. Plaintiff alleges that Boles punched plaintiff with a "closed fist[] three times in the head and side of face" and composed a "fictitious report" that attributed "false statements" to plaintiff. ECF No. 1.

Plaintiff does not plausibly allege that defendants Deputy Majusiak or FTO Flores either personally participated in or caused the alleged deprivations. Plaintiff alleges that these two officers monitored plaintiff in the booking room while Boles searched his cell. *Id.* at 3. After the interaction between Boles and plaintiff became physical, plaintiff alleges that custodial officers "threw [him] to the ground" and ultimately lifted him by his hair, *id.* at 4, but plaintiff does not identify Majusiak or Flores as perpetrators. Plaintiff's general allegations against "custodial

---

[1] Plaintiff will be given leave to file an amended complaint that names a proper defendant. If plaintiff names a local governmental unit, he should consider explaining whether any injuries he suffered were inflicted by the "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent policy." *Monell*, 436 U.S. at 694.

officers" do not state claims against Deputy Majusiak or FTO Flores for constitutional violation under § 1983. The court will thus recommend that the claims against defendants Deputy Majusiak and FTO Flores be dismissed with leave to amend. The remaining question is whether defendant Boles's alleged actions violated federal law.

### A. Claim I: Excessive Force

The Eighth Amendment's prohibition against cruel and unusual punishment forbids excessive force in prison. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An excessive force claim "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 795 (9th Cir. 2018) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). To decide whether a defendant used excessive force, a court ordinarily considers "(1) the need for application of force; (2) the extent of injuries; (3) the relationship between the need for force and the amount of force used; (4) the nature of the threat reasonably perceived by prison officers; and (5) efforts made to temper the severity of a forceful response." *Lyons v. Busi*, 566 F. Supp. 2d 1172, 1186-87 (E.D. Cal. 2008) (quoting *Hudson*, 503 U.S. at 7). A district court must give deference to prison officials' decision to use force when the use of force pertains to security and order in prison. *See Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Here, accepting plaintiff's allegations as true, the court finds that he has stated an excessive force claim against defendant Boles. Plaintiff alleges that when he stood from a chair, his head accidentally bumped Boles's chin, and Boles reacted by punching plaintiff with a "closed fist[] three times in the head and side of face." ECF No. 1, at 4. Plaintiff alleges that the punches caused him physical and mental harm. *Id.* at 3.

### B. Claim II: Mail Interference

Plaintiff has not properly named a defendant against whom his mail-interference claim may be asserted. Nonetheless, considering plaintiff's pro se status, the court will explain certain of the legal standards pertaining to mail-interference claims. Plaintiff should consider the following standards if he reasserts this claim in an amended complaint against a properly-named

defendant.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). The inspection for contraband of non-legal mail does not violate a prisoner's constitutional rights. *See id.*, 52 F.3d at 265-66 (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail). Prison officials also may institute procedures for inspecting legal mail, for example, mail sent between attorneys and prisoners, *see Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (holding that a state may constitutionally require that mail from an attorney to a prisoner be identified as such and that the attorney's name and address appear on the communication), and mail sent from prisoners to the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574-75 (9th Cir. 1986) (outgoing mail to court). But the opening and inspecting of legal mail outside the presence of the prisoner may have an impermissible chilling effect on the constitutional right to petition the government. *See O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir.1996) (citing *Laird v. Tatum,* 408 U.S. 1, 11 (1972)).

Isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation. *See Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 955 (9th Cir. 2009) (holding that prison officials' erroneous opening of one piece of legal mail "without a showing of actual injury or improper motive, cannot by itself establish a violation of his right of access to the courts"); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (same).

If plaintiff believes that defendants interfered with his mail as retaliation for plaintiff engaging in protected conduct, he may have a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment

8

> rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (holding that prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline); *Barnett v. Centoni*, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam) (same).

The prisoner must prove all elements of a viable retaliation claim, including the absence of legitimate correctional goals for the conduct about which he complains. *Pratt*, 65 F.3d at 806. Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone.'" *Id.* at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)). In particular, courts should "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Id.* (quoting *Sandin*, 515 U.S. at 482).

The prisoner also must show that the constitutionally-protected activity in which he was engaged was a substantial or motivating factor for the alleged retaliatory action. *See Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir.1997) (inferring retaliatory motive from circumstantial evidence). The prisoner need not prove a total chilling of his First Amendment rights to state a claim for retaliation; that his First Amendment rights were chilled, though not necessarily silenced, is enough. *Rhodes*, 408 F.3d at 569. But the prisoner at least must allege that he suffered harm, since harm that is more than minimal will almost always have a chilling effect. *Id.* at 567-68 n.11; *see Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000) (holding that a retaliation claim is not actionable unless there is an allegation of harm).

**C. Claim III: Deprivation of Nutrition**

Plaintiff has not properly named a defendant against whom this claim may be asserted. Nonetheless, considering plaintiff's pro se status, the court will explain certain of the legal standards pertaining to deprivation of nutrition claims. Plaintiff should consider the following standards if he reasserts this claim in an amended complaint with a properly-named defendant.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), *abrogated in part on other grounds by Sandin v. Connor*, 515 U.S. 472 (1995); *see also Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

A claim challenging conditions of confinement under the Eighth Amendment has two elements. *See Farmer,* 511 U.S. at 834. "First, the deprivation must be, objectively, sufficiently serious."[2] *Id.* (internal quotation marks and citation omitted). Second, "prison officials must have a sufficiently culpable state of mind," which for conditions of confinement claims, "is one of deliberate indifference." *Id.* (internal quotation marks and citation omitted). Prison officials act with deliberate indifference when they know of and disregard an excessive risk to inmate health or safety. *Id.* at 837. The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to support an Eighth Amendment claim. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). Mere negligence on the part of a prison official cannot establish liability; the official's conduct must have been

---

[2] Plaintiff's allegations concerning the deprivation of nutrition, as currently pleaded, do not appear to be sufficiently serious to state a claim. Plaintiff references "documentation of [medical] attention that had arose from the [deprivation of nutrition]." ECF No. 1, at 7. If plaintiff reasserts this claim in an amended complaint, he should consider elaborating on the health problems caused by the alleged deprivation of nutrition.

wanton. *See Farmer*, 511 U.S. at 835; *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998).

**IV. CONCLUSION**

The court has screened plaintiff's complaint and finds that plaintiff states an excessive force claim against defendant Deputy P. Boles. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that plaintiff be granted leave to amend the complaint.

Should plaintiff choose to amend the complaint,[3] the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of plaintiff's constitutional or other federal rights. *See Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. *See id.* at 677. Plaintiff must allege that each defendant personally participated in the deprivation of his rights. *Jones*, 297 F.3d at 934 (emphasis added). Plaintiff should note that a short, concise statement of the allegations in chronological order will assist the court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of plaintiff's rights. Plaintiff should also describe any harm he suffered from the violation of his rights. Plaintiff should not fundamentally alter his complaint or add unrelated issues.

Any amended complaint will supersede the original complaint, *Lacey v. Maricopa County*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete on its face without reference to the prior, superseded pleading, *see* E.D. Cal. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be titled "First

---

[3] In making this calculation, plaintiff should consider whether his claims are properly brought in the same complaint. If the three claims are unrelated, they might be more properly asserted in three discrete lawsuits.

11

Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

### V. RECOMMENDATIONS

Under 28 U.S.C. § 636(c)(1), all parties named in a civil action must consent to a magistrate judge's jurisdiction before that jurisdiction vests for "dispositive decisions." *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). No defendant has appeared or consented to a magistrate judge's jurisdiction, so any dismissal of a claim requires an order from a district judge. *Id.* Thus, the undersigned submits the following findings and recommendations to a United States District Judge under 28 U.S.C. § 636(b)(l):

1. Plaintiff states an excessive force claim against defendant Deputy P. Boles.
2. Plaintiff's remaining claims should be dismissed without prejudice, and plaintiff should be granted leave to amend the complaint.
3. If plaintiff files an amended complaint, defendant Boles should not be required to respond until the court screens the amended complaint.

Within fourteen (14) days of service of these findings and recommendations, plaintiff may file written objections with the court. If plaintiff files such objections, he should do so in a document captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: October 25, 2018

_____
UNITED STATES MAGISTRATE JUDGE